IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CREDIT GENERAL INSURANCE      :
COMPANY, *et al.*,

                            :     Case No. 2:05-cv-148

           Plaintiffs,

                            :     Judge Watson

   v.

                            :     Magistrate Judge Abel

INSURANCE SERVICES GROUP,
INC., *et al.*,                        :

           Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on Plaintiff's March 17, 2005 motion to remand (doc. 7).  On February 15, 2005, Defendants removed this action from the Franklin County Court of Common Pleas on the basis of diversity of citizenship.  This action was filed in state court by the Liquidator of two insolvent insurance companies to collect unpaid earned premiums due to the insurance companies as well as unearned commissions that had been collected by the insurance companies' agents and/or brokers.  Plaintiffs argue that Ohio's Liquidation Act, through the application of the McCarran-Ferguson Act, reverse preempts federal jurisdiction over this matter; therefore, this action must be remanded.

**I. Background.**

Plaintiffs are Credit General Insurance Company and Credit General Indemnity Company (collectively referred to as "Credit General").  Credit General is domiciled in Ohio, and at all relevant times, it qualified as a domestic insurance company within the

meaning of Title 39 of the Ohio Revised Code. (Compl. ¶¶ 7 and 8). Defendants are Insurance Services Group, Inc. and Appalachian Underwriters Inc.; both Defendants have their principal place of business in Tennessee. (Compl. ¶ 3).

The relevant business relationship between the parties began on October 1, 1998 when Defendants entered into a General Agency Agreement with Credit General. Defendants were appointed as the non-exclusive agents of Credit General and agreed to solicit certain workers' compensation business underwritten by Credit General. (Compl. ¶ 4). Defendants acted as brokers, agents subagents, or producing agents for Credit General. (Compl. ¶ 10). On March 21, 2001, Defendants entered into an Internet Insurance Services Agreement with PRS Enterprises, Inc. and PRS Enterprises Insurance Services, Inc.; the agreement enabled Defendants to solicit and service certain workers' compensation insurance business over the Internet which were underwritten by Credit General. (Compl. ¶ 5).

Defendants collected premiums for the Credit General policies they issued. (Compl. ¶ 11). As brokers, agents, subagents, or producing agents for Credit General, Defendants received premiums and unearned commissions for these policies. (Compl. ¶ 12). On December 12, 2000 and January 5, 2001, in accordance with Ohio Revised Code Chapter 3903, the Franklin County Court of Common Pleas declared Credit General insolvent. (Compl. ¶ 13). According to Ohio Rev. Code § 3903.18(A) and the court's liquidation orders, the Ohio Superintendent of Insurance was appointed Liquidator. As part of the liquidation orders, the Liquidator was directed to collect all of Credit General's assets including any money owed to it. (Compl. ¶ 15). In an effort to collect this money, the Liquidator brings this action on behalf of Credit General.

## II.  Credit General's Claims.

The Liquidator is trying to collect funds on behalf of Credit General.  In Count

One, the Liquidator makes a claim pursuant to Ohio Rev. Code § 3903.33(A) which

states

> (A) An agent, broker, premium finance company, or any other person,
> other than the insured, responsible for the payment of a premium is
> obligated to pay any unpaid earned premium due the insurer at the time of
> the declaration of insolvency, as shown on the records of the insurer. The
> liquidator may recover from such person any part of an unearned
> commission of such person.

Credit General maintains that Defendants owe unpaid premiums to it.  (Compl.¶

18).  Defendants also allegedly owe Credit General money for unearned commissions

that arose as a result of the policy cancellations by Defendants' clients.  (Compl. ¶ 19).

Credit General believes the amount of the premiums and unearned commissions is at

least $25,000, and despite Credit General's demand for the money, Defendants have

refused to pay Credit General.  (Compl. ¶¶ 20 and 21).

In Count Two, Credit General argues that Defendants have failed to comply with

the demands of the Liquidator.  The Ohio Revised Code authorizes the Liquidator to

"[c]ollect all debts and moneys due and claims belonging to the insurer, wherever

located."  Ohio Rev. Code § 3903.21.  Further, not only do Defendants owe Credit

General for the unpaid premiums and unearned commissions, but Defendants also owe

any interest or other income that accrued on these monies.  (Compl. ¶¶ 25 and 26).

Count Three alleges that Defendants breached an implied contract by failing to

pay Credit General for the premiums and unearned commissions along with any interest

or other income that accrued on such premiums and unearned commissions.  (Comp. ¶

3

33).

Count Four makes claims for accounting and turnover of funds.  Credit General states that as parties to the agency agreement and Internet agreement, Defendants were obligated to charge, collect, receive and receipt all premiums, premium surcharges, and fire district and other taxes.  (Compl. ¶ 36).  Further, Defendants, acting as trustees for Credit General, were obligated to hold all the premiums collected in a fiduciary account separate and apart from Defendants' other funds.  (Compl. ¶ 37).  Credit General maintains that it is entitled to an accounting identifying all premiums, funds, money, proceeds, interest, or other income that was debited and/or credited to the fiduciary account.  (Compl. ¶ 38).  Credit General also claims that it is entitled to recover any funds that remain in the account or were inappropriately diverted, withdrawn, assigned, setoff, or otherwise transferred.  (Compl. ¶ 39).

Count Five is for breach of contract.  Credit General maintains that pursuant to the agency and Internet agreements, Defendants were obligated to accept business only from sub-producers who agreed in an advanced writing to return any unearned commissions on canceled policies.  Defendants agreed to assume these obligations and pay any and all costs and expenses associated with performance of these requirements.  Defendants further agreed to promptly refund Credit General for any commissions on canceled policies. (Compl. ¶ 41).  Credit General maintains that Defendants have failed to return, refund, and/or pay Credit General for the premiums and unearned commissions in breach of the agreements between the parties.

Count Six is for breach of fiduciary duty.  In this count, Credit General argues that Defendants breached their fiduciary duty to Credit General by failing to turn over all

premiums and unearned commissions to Credit General.  (Compl. ¶ 45).  Accordingly,

Credit General seeks recovery of the premiums and unearned commissions plus any

interest or other income that may have accrued on these monies.  (Compl. ¶ 47).

Count Seven alleges unjust enrichment.  Credit General argues that Defendants

were unjustly enriched when they retained the money owed to Credit General for the

premiums and unearned commissions as well as any interest or other income that may

have accrued.

### III.  The Parties' Arguments Relating to Remand.

Credit General argues that this action must be remanded to the Franklin County

Court of Common Pleas pursuant to 28 U.S.C. § 1447(c) because diversity jurisdiction

is "reverse preempted" by the provisions of the Ohio Insurers Supervision,

Rehabilitation, and Liquidation Act, Ohio Rev. Code Chapter 3903, through the

operation of the McCarran-Ferguson Act, 15 U.S.C. § 1101 *et seq.*  Credit General is in

the process of liquidation as an insolvent insurance carrier, and according to the Ohio

Liquidation Act, the Franklin County Court of Common Pleas is the sole forum available

for resolving claims involving the estate of the insolvent insurer.  Credit General further

argues that if this Court determines that remand is not necessary, then in the

alternative, this Court should abstain from jurisdiction based on *Burford v. Sun Oil Co.*,

319 U.S. 315 (1943).  *Burford* allows state courts to consider and decide issues of state

policy while the federal court abstains from exercising its jurisdiction.  Credit General

maintains that *Burford* is implicated because Ohio has a comprehensive legislative

scheme governing the liquidation of Ohio insurance companies.  Further, Credit General

states that it should be awarded attorney's fees and costs for filing this motion because

based on the clear weight of the case law removal was improper.

Defendants respond by stating that the McCarran-Ferguson Act's reverse preemption doctrine does not apply when the insolvent insurance company's claims are ordinary contract claims, and Credit General's claims are too attenuated to the "regulation of insurance" to implicate McCarran-Ferguson.  Further, there is no basis for this Court to abstain from its exercise of jurisdiction.

## IV.  Discussion.

Removal is permitted under 28 U.S.C. § 1441(a): "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed [to federal court] by the defendant."  Defendants removed this action on the basis of diversity.  28 U.S.C. § 1332(a).  Credit General now seeks to remand this action.

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.  A certified copy of the order of remand shall be mailed by the clerk of the State court.  The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c).

Generally, federal law will preempt a conflicting state law by virtue of the Supremacy Clause.  *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948 (6th Cir. 2002).  The McCarran-Ferguson Act reverses the preemption effect in certain insurance cases.  *See United States Treasury Dep't. v. Fabe,* 508 U.S. 491, 500-01 (1993).

The McCarran-Ferguson Act states in pertinent part:

6

> No act of Congress shall be construed to invalidate, impair, or supercede any law enacted by any State for the purpose of regulating the business of insurance, unless such Act specifically relates to the business of insurance.

15 U.S.C. § 1012(b).  This provision was designed to protect "state regulation . . . against inadvertent federal intrusion . . .[by] a federal statute that describes an affected activity in broad, general terms, of which the insurance business happens to constitute one part."  *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 29 (1996) (emphasis omitted).  "The first clause of § 2(b) [states a] rule that state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise."  *Fabe*, 508 U.S. at 507.  To determine whether a state law preempts federal law, there is a three part test that must be satisfied:

> (1) the federal statute at issue must not specifically relate to the business of insurance; (2) the application of the federal law in question must "invalidate, impair, or supersede" the corresponding state law; and (3) the state law must be enacted "for the purpose of regulating the business of insurance.

*Covingington v. Carvill Am. Inc.*, 2:01-cv-105 (S.D. Ohio Nov. 5, 2001).  In this case, the first prong is satisfied: the federal statute is the removal statute, 28 U.S.C. § 1441; it does not specifically relate to the business of insurance.

The state law at issue is Ohio's Insurers Supervision, Rehabilitation and Liquidation Act, ("Liquidation Act").  Ohio's Liquidation Act is the statutory scheme that is used to dissolve insolvent insurance companies.  The Franklin County Court of Common Pleas is given the exclusive jurisdiction to dissolve Ohio insurance companies under the Act.  *Covington v. Sun Life of Canada (U.S.) Holdings, Inc.*, 2000 WL

33964592 *1 (S.D. Ohio May 17, 2000).  It has been described as follows:

> The Liquidation Act is a comprehensive administrative scheme which
> regulates delinquency proceedings in connection with insolvent insurance
> companies.  It is designed to protect the "interests of insureds, claimants,
> creditors, and the public generally," to enhance the "efficiency and
> economy of liquidation," and "to minimize legal uncertainty and litigation."
> Ohio Rev. Code § 3903.02(D).  Ohio's superintendent of insurance may
> commence delinquency proceedings against a financially troubled insurer
> in order to rehabilitate or liquidate it.  Ohio Rev. Code §§ 3903.12 and
> 3902.17.  An insurance company may be placed into liquidation if it is
> insolvent; the superintendent believes that rehabilitation would
> substantially increase the risk of loss to creditors, policyholders, or the
> public, or would be futile; and it "is in such condition that the further
> transaction of business would be hazardous, financially, to its
> policyholders, creditors, or the public."  Ohio Rev. Code §§ 3903.12 and
> 3902.17.  When an insurance company is placed into delinquency
> proceedings, the Franklin County Court of Common Pleas is vested with
> exclusive jurisdiction over all actions authorized by the Liquidation Act.
> Ohio Rev. Code § 3903.04(E).

*Covington*, 2000 WL 33964592 *2; *United of Omaha Life Ins. Co. v. Udisky,* 2001 WL

102670 (S.D. Ohio Jan. 23, 2001) (quoting Ohio Rev. Code § 3903.02(D)); *see Fabe*,

508 U.S. at 494 (stating that Chapter 3903 is "part of a complex and specialized

administrative structure for the regulation of insurance companies from inception to

dissolution.").  In *Sun Life*, Judge Holschuh determined that section 3903.04 was a law

that was enacted for the purpose of regulating insurance and was reverse preempted by

McCarran-Ferguson.

> By vesting exclusive jurisdiction over all claims relating to insolvent
> insurance companies in the Franklin County Court of Common Pleas, the
> State of Ohio aims to protect the relationship between insurer and insured
> (1) by eliminating the risk of conflicting rulings, piecemeal litigation of
> claims, and unequal treatment of claimants, all of which are of particular
> interest to insurance companies and policyholders, who are often relying
> on policies with the same or similar provisions, (2) by assuring both the
> insurance company and its policyholders that the insurance company will
> be liquidated in an organized fashion, and (3) by preventing the
> unnecessary and wasteful dissipation of the insolvent insurance

company's funds that would occur if the Liquidator had to litigate
unconnected suits in different forums across the country. (Citations
omitted).

*Covington*, 2000 WL 33964592 * 8.

When determining whether a law attempts to regulate the business of insurance,
the proper focus is "on the relationship between the insurance company and the
policyholder. Statutes aimed at protecting or regulating this relationship, directly or
indirectly are laws regulating the 'business of insurance'" *S.E.C. v. Nat'l Sec. Inc.*, 393
U.S. 453, 460 (1969); *see Fabe*, 508 U.S. at 493 (stating the federal priority statute was
preempted by Chapter 39 of the Ohio Revised Code, through the application of the
McCarran-Ferguson Act, "to the extent that it protects policyholders."). There are three
factors that are considered in determining what constitutes the business of insurance:

> first, whether the practice has the effect of transferring or spreading a
> policyholder's risk; second, whether the practice is an integral part of the
> policy relationship between the insurer and the insured; and third, whether
> the practice is limited to entities within the insurance industry.

*Covington*, 2000 WL 33964595 * 4 (quoting *Life Ins. Co. v. Pierno*, 458 U.S. 119, 129
(1982)).

In *Covington*, the Liquidator sought to have an action remanded to the Franklin
Court of Common Pleas. The Liquidator brought suit on behalf of the insolvent
insurance company to recover certain preferential and fraudulent transfers made to the
defendants. *Covington*, 2000 WL 33964592 *1. The court decided that the action
should be remanded because it was reverse preempted. It held that the provisions of
Chapter 3903 which allowed the Liquidator to recover any preferential transfers was
"aimed at protecting policyholders by increasing the likelihood of payment of their claims

9

despite the insurer's insolvency . . . ." *Id*. at 8.  *See also Fabe*, 508 U.S. at 504 (stating that Ohio's priority statute was "designed to carry out the enforcement of insurance contracts by ensuring payment of policyholders' claims despite the insurance company's intervening bankruptcy.").

Credit General argues that Ohio Rev. Code § 3903.33, which deems unpaid earned premiums and unearned commissions assets of the insolvent insurer, benefits policyholders; therefore, McCarran-Ferguson reverse preemption applies.  Ohio Revised Code § 3903.04(E) states that "[a]ll actions authorized in sections 3903.01 to 3903.59 of the Revised Code shall be brought in the court of common pleas of Franklin county."  The Ohio Liquidation Act requires that the agents and/or brokers pay unpaid earned premiums and unearned commissions to the Liquidator.  Ohio Rev. Code § 3903.33(A).  The Liquidator's ability to recover these monies from Defendants directly affects the policyholders because the Liquidator will be collecting assets on behalf of Credit General for the benefit of any insureds by increasing the likelihood that the insureds will be able to collect on their claims.  The Liquidation Act and its application to the facts of this case are regulating the business of insurance.

Further, applying the removal statute to these facts would invalidate, impair, or supercede the exclusive jurisdiction given to the state court to dissolve insolvent insurance companies for the benefit of the policyholders.  *See Covington v. Carvill Am. Inc.*, Case No. 2:01-cv-105 p. 13 (S.D. Ohio Nov. 5, 2001); *Covington*, 2000 WL 33964592 *10 (stating that allowing the federal court to exercise jurisdiction over the claims would "invalidate, impair, or supercede" the Liquidation Act "by preventing consolidation of all liquidation proceedings related to an insolvent insurance company in

one forum."). However, the continued validity of the *Sun Life* line of cases has been called in question by *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004), which held that there is no reverse preemption where the receiver himself files an ordinary contract claim against the removing defendant.

In *AmSouth*, the plaintiff, AmSouth Bank, brought a declaratory judgment action against a number of insurance company receivers. Prior to filing suit, the receivers were trying to recover funds that had been embezzled from a number of insurance companies. *Id.* at 770. Frankel, the embezzler, bought seven insurance companies and was funneling the companies' cash reserves to overseas bank accounts. *Id.* The receivers argued that AmSouth Bank was negligent in failing to detect the fraud. *Id.* AmSouth Bank filed a complaint for declaratory relief in the U.S. District Court asking that it be declared not liable. *Id.* at 772. Judge Moore's opinion drew a distinction between cases brought against insolvent insurance companies and cases brought on behalf of those companies by a liquidator:

> Reviewing the lines of cases cited by the parties, it becomes clear that often when faced with suit in the federal courts, a state commissioner of insurance as receiver or liquidator of an insurance company placed under the state's care will rely on [the McCarran-Ferguson or *Burford*] doctrines to attempt to defeat federal court jurisdiction. Because state liquidation proceedings of insolvent insurers are exactly the sort of intricate state regulation on behalf of state-resident policyholders that these doctrines are intended to protect, these arguments have some force when angry creditors attempt to use insolvent insurance companies in federal court to jump ahead in the queue of claims, but they have less force here, where the insurance companies are themselves the natural plaintiffs, as Receivers vociferously argue. This dispute involves the Receivers' attempt to recover money in an ordinary common-law-damages suit; the Banks do not here attempt to disrupt a coherent state scheme in favor of enriching its own pockets.

*Id.* at 780.

The court then provided the following standard for determining when there is reverse preemption:

> McCarran-Ferguson reverse preemption depends upon the policies that undergird state law.  Where a state law protects state insurance-policyholders, it is a "law enacted . . . for the purpose of regulating the business of insurance"; when it protects other interests, for instance, those of stockholders in those insurance companies, it is not such a law within the meaning of the Act.  *See SEC v. Nat'l Sec. Inc.*, 393 U.S. 453, 457 (1969).  The connection to the protection of the policyholders cannot be too attenuated . . . .

*Id.* at 781.  "Where the insolvent insurer is itself a plaintiff in an ordinary contract or tort action, courts tend to look unfavorably on claims of McCarran-Ferguson preemption of the . . . removal statutes so as to insulate that action from federal courts."  *Id.* at 783.  Moreover, McCarran-Ferguson does not apply when the parties are merely attempting to evade federal jurisdiction by alleging the claims implicate a "regulation of the business of insurance."  *Id.*  A court deciding whether the federal removal statute is pre-empted by a state law must look carefully at the purpose of the particular statute and the particular cause of action pleaded.  The fact that the receiver's suit will bring money into the receivership is not alone sufficient ground to hold that there is reverse McCarran-Ferguson preemption.  The court determined that McCarran-Ferguson reverse preemption did not apply to AmSouth's declaratory judgment suit against the liquidators:

> an ordinary suit against a tortfeasor by an insolvent insurance company implicates a "regulation of the business of insurance" only in the attenuated fashion rejected in *Fabe*; an antisuit injunction would only be regulation of the business of insurance to the extent it protected the assets of the insurance company from suit.  Here of course, the Banks seek only declaratory judgment, based in turn on a threatened ordinary common-law action against them, and the assets of the insurance companies are up for grabs only in that attenuated fashion.

*Id.* at 783.

While *AmSouth* calls into question the continued validity of the *Sun Life* line of cases, it is distinguishable.  First, this case is not a declaratory judgment action.  Rather, it is a suit by the Liquidator to recover premiums and commissions owed to the insolvent insurance companies.  Second, the collection of these assets by the Liquidator would directly advance the interest of the policyholders.  Third, this action derives from the Ohio statutory scheme.  This action is not a garden variety common law damages suit tangentially related to the Liquidation Act; all of the claims advanced are either pleaded under or derived from Title 39 of the Ohio Revised Code.  Moreover, the claims also arise from the liquidation orders issued by the Franklin County Court of Common Pleas which were issued pursuant to liquidation in accordance with Chapter 3903.[1]  Therefore, the claims arise from Ohio Rev. Code §§ 3903.33 and 3903.21.  This court's exercise of jurisdiction would directly interfere with Ohio's complex statutory scheme.  Finally, the *AmSouth* case did not involve the Ohio statutory scheme.  In fact, the court's discussion of McCarran-Ferguson did not describe or even reference state statutory schemes.  Although cases construing Ohio's statutory scheme were cited,  Ohio's statutory scheme was not at issue in *AmSouth*.  Ohio's Liquidation Act was enacted to protect policyholders, and all of the claims asserted against Defendants derive from the Act.  The claims in *AmSouth* were common law negligence claims, which the court ultimately found were too attenuated to the state's laws regulating the business of

---

[1]  This Court recognizes that section 3903.30 does not contain a right to set off; however, section 3903.33 does deem unearned commissions and unpaid premiums assets of the insolvent insurer.  Therefore, these claims are derivative of the statutory scheme created to benefit the policyholders.

insurance.   Therefore, I find that *AmSouth* is not controlling.

**V.  Attorney's Fees and Costs.**

"An order remanding the case may require payment of just costs and any actual

expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. §

1447(c).  An award is not automatic, but it may be made when it is "fair and equitable

under all the circumstances."  *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240

(6th Cir. 1993) (quoting *Morgan Guarantee Trust Co. v. Republic of Palau*, 971 F.2d

917, 924 (2d Cir. 1992)).  The Sixth Circuit has provided the following standard in

rendering and upholding awards:

> an award of costs, including attorney fees, is appropriate where the
> defendant's attempt to remove the action was "fairly supportable," . . . or
> where there has not been at least some finding of fault with the
> defendant's decision to remove . . . .  By reverse implication, a court
> abuses its discretion by refusing to award fees where the defendant's
> argument for removal was devoid of even fair support.

*Aheam v. Charter Township of Bloomfield*, 1998 WL 384558 *2 (6th Cir. June 18, 1998)

(citations omitted).  This Court has determined that the continued validity of the *Sun Life*

line of cases has been called into doubt; this is evidence of the reasonableness of

Defendants' removal.  Accordingly, Plaintiffs will not be awarded attorney's fees and

costs for opposing the removal of this action.

**VI.  Conclusion.**

Accordingly, I **RECOMMEND** that this action be **REMANDED** to the Franklin

County Court of Common Pleas.  I **FURTHER RECOMMEND** that Plaintiffs' request for

attorney's fees and costs be **DENIED**.

If any party objects to this Report and Recommendation, that party may, within

ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

/s/ Mark R. Abel
United States Magistrate Judge